Next case, oral argument is People v. Allison. Good morning, counsel. Good morning. May it please the court. Counsel, my name is Scott Quinn, and I am the court-appointed attorney for Charles Peter Allison, who has been, uh, uh, confined as a sexually dangerous person, um, since, uh, the early 1990s, and, uh, this is his latest of several appeals, um, on the, uh, review process. Um, he filed an application for joint recovery, um, back in 2000, 2007 or 2008, but I've represented him so many times, they weren't together. Uh, we filed an interlocutory appeal, that was denied, and then went ahead and had the trial in front of Judge, um, Joe Harrison, I almost said Moses Harrison. Um, and, uh, he was, uh, um, it was a jury trial, he was found to remain sexually dangerous, um, but that was, the jury was, uh, instructed to use the burden, consistent with the statute, as it's now written, of, uh, clear and convincing evidence instead of beyond reasonable doubt, and it's my client's contention that, uh, the legislature overstepped its bounds, uh, boundaries set up by the, uh, U.S. Supreme Court, um, by reducing that burden of proof beyond a reasonable doubt. Before I go any further, I think I need to call the Court's attention that, uh, this Court recently heard this identical issue in a case back in August or September, called People v. Christopher Craig, I think Mr. Camden was on that case as well, and unless something has just happened that I'm not aware of, I think the case is still, uh, pending without any, uh, decision coming back, so, uh, coming down from this Court, so, uh, I, I did want to call you, uh, call that to your attention, and with the Craig case floating out there, I strongly consider this way more argument, um, you guys, Your Honors, are obviously capable of reading the Crane case, reading the Hendrix case, and the other cases we've cited in our briefs, and, and determining on your own, um, if you agree with my contention that, uh, the beyond reasonable doubt standard still needs to apply, apply in these sexually dangerous persons case, uh, cases, uh, the application and recovery process, uh, or if they're convincingly acceptable, but I, I felt that I did need to go ahead and, uh, come to the oral argument because I think we need to, I need to address this notion, uh, false notion I say that, uh, the State kind of raised in their brief, you know, that if it's good for the sexually violent person program, it should be good for the sexually dangerous program. I, I'm here to tell you that that couldn't be, uh, more false. Uh, they're two drastically different programs. I pointed out some of the basic differences. Well, let me, let me ask you about that, um, because I thought that was a really interesting clash. They, they, the statutes obviously are different. Yes. They are not duplicative statutes. Right. Um, the concept running through a number of these cases in, in that area, in, uh, probation, revocation and everything is, excuse me, um, I'm fighting allergies and winning. Um, that once a state has proven its initial case, which resulted in whatever kind of confinement, beyond reasonable doubt, in order to maintain that status, it need not reproof its case at every time it comes up for review, which essentially is intended to make sure that people under these acts are not warehoused. And in the, um, uh, situation of probation revocation, that, uh, um, to make sure that there's just not permanent, eternal vigilance of the state over someone's actions. Uh, what, what's your, what's your response to that underlying concept? I definitely agree that that is the trend in most, uh, areas of law, uh, criminal law and, you know, probation, revocation, that kind of thing. But the, uh, the second case on the Kansas statute, the first case was Hendricks and that one they set out, here is what our program needs to be. They say, well, you need to have political control options and that kind of thing. But then Kansas went too far and then came back. So didn't that be total political control? Well, in that second case, the, uh, the Craig, sorry, Craig, I've had Craig on the line. Crane case, uh, Justice Thomas sets out, uh, what is acceptable. Now, it was Dick that he was saying, here's what the Kansas program is and we find it, you know, under these parameters as being acceptable. Well, one of the, one of the parameters and the one I'm hanging my hat on, frankly, is that in that Kansas statute under Crane, the review process was every year and the, uh, standard was beyond a reasonable doubt. So, um, you know, so they. Recently, uh, Supreme Court of the United States versus Comstock decided May 17th, 2010. Are you familiar with that case? I am. I was familiar with the, uh, um, the case that was going on. I've got to admit that my, uh, associate with my right arm in my office is on maternity leave and I've run around with a chicken in my head for the last month. I think in that case the U.S. Supreme Court specifically addressed the issue about whether or not under the federal statute proof by clear and convincing evidence is sufficient and said we're not going to decide that. But I think it's an open, I think it's kind of hard to argue that they decided it in Hendricks and your other cases when they've now said we recognize that issue is out there but we're going to leave it for another day. Well, I can agree with you. I mean, I was following Comstock, but I just hadn't read the decision since it came out. But I think that what I can say is that the one program that was acceptable was the Crane program, the program under Crane. And I think that in my reply brief when I point out the differences between the sexually dangerous person program and the sexually violent person program and keeping that in light of the quote that I added from the Winship case from the early 1970s. It was juvenile proceeding, wasn't it? What's that? Winship? Judge, the panel in People v. Craig, I think, was waiting on that U.S. Supreme Court case that you referred to, hoping that it could give them some guidance. And, you know, it's no secret that, you know, the sexually dangerous person case and the sexually violent person cases here in southern Illinois, it's usually going to be either me or Jason Barnhart that get appointed to them. So we share information. And he pointed out, he's like, hey, you've got to put Winship in your brief here. And so that's where I pulled it out in the reply brief, not in my regular brief. You know, but I think that is kind of where I get back to Judge Stoltenberg's question of, well, why should this be different than, you know, the norm? Is that, yeah, all the cases called the sexually dangerous person act, a quasi-civil, quasi-criminal thing, but criminal area of law. But I just love this quote because, you know, civil labels and good intentions don't themselves obviate the need for the criminal due process safeguards. And I think that in a situation whenever they – they're not sent to a hospital like the sexually violent persons program. They're sent to a prison. My letters I get from my sexually dangerous persons clients are – the grievances are much more extreme than my sexually violent person clients that are complaining that they're not – they didn't get to play a T-rated video game or that kind of thing. There's a whole lot less restriction, a whole lot less freedom, a whole lot less movement on the sexually dangerous person program. You know, they're in a prison. It's the Department of Corrections versus the Department of Human Services. The appeal process is not automatic. They've got to file – like Mr. Allison, they do with great frequency. They've got to file their application to earn recovery, whereas in the sexually violent person program, it comes up automatically. They review it every year to see if there's a probable cause to think that the situation may have changed. And I think that that's important for the rights of the entire population, not just Mr. Allison or Mr. Ashby, whose case I argued yesterday, but for the entire population. The courts need to be holding the feet to the fire of the legislatures because it's so easy for those people in Springfield to say I was hard on sex offenders. I made the law, tough on sex offenders, repeat sex offenders, but we just can't trample on their due process rights. And so I think, as Justice Stewart has summarized the cause of that case, and I think for that, I was really with my pants down on that, it sounds to me like it's something that the court will, in this case and the Craig case, if you've got some leeway to decide, are we going to continue to ride this wave, this trend, or are we going to recognize that these people that are confined in the Department of Corrections, prosecuted by the state's attorneys or the attorney's generals, are going to have to still submit to lesser and lesser, or be protected by fewer and fewer of the safeguards that a normal criminal client faces. And so, I mean, that's, you know, the crux of my argument is that we've got to err on the side of the person whose liberty interests are being deprived. Can you explain the difference between clear and convincing and beyond a reasonable doubt, quantitatively, what's the difference between those two? I don't know if there's a mathematical... How would you explain it? I mean, you know, something that's beyond a reasonable doubt. No reasonable person hearing the evidence is going to look at it and say, yeah, I've got a doubt in my mind. Whereas clear and convincing, yeah, I'm convinced. You know, things make me convinced without being totally convinced or 100% convinced. It's sort of like whenever my daughter tells me, yeah, I see this message on her cell phone. It's at 11.59 at night. And I, you know, ask her if she was texting after bedtime or whatever, and she says, oh, no, I just got, you know, he just sent me that. Well, in the back of my mind, I've got some doubt in my mind because I think, well, it's odd to see this text at 11.59 at night. I'm thinking maybe that she just deleted the other one so she wouldn't get in trouble and just got careless. But because she's a good girl overall, I'm convinced. I still have a bit of doubt in my mind, but I'm convinced that she wasn't texting at 11.59 at night. And so I think you can be convinced without being totally convinced. Recently convinced. Yeah. And so I think that's the difference in whenever... You understand it's pretty hard to quantify. Oh, yeah. And when you're just trying to explain it to 12 lay jurors, you know, it's extremely confusing and difficult to explain. But I think that... But these 12 lay people can figure it out. Determine the difference between the two, yeah. I mean, obviously, they're both high standards that have to be met. But I think that a long line of cases, you know, whenever, you know, criminal cases in general are involved, you know, it's always beyond a reasonable doubt. And, you know, that's not beyond any scintilla or doubt or shallow of a doubt or anything like that. But, I mean, I think that we each have in our mind what a reasonable man standard is and what a reasonable person would think. And so you don't have to jump into some sort of omniscient or all-knowing presence to sit on a jury. So clear convincing, would that include, in some instances, a reasonable doubt? Somebody can have a reasonable doubt but still be convinced and clearly convinced. And so, I mean, it's not beyond at all reasonable doubt. I can see where a reasonable mind should differ. But I'm convinced, so I'm saying he's guilty. And so I think that's where, you know, in that gray area somewhere. A person can have a reasonable doubt and still be clearly convinced that it's right. That's what I'm saying. And that was my example with my daughter on the cell phone is that I'm convinced that she didn't do it, but I've still got a little bit of a doubt in my mind. It's reasonable to have that doubt. I'm not being an awful dad or, you know, a paranoid person by having that doubt. It's reasonable to have it, but I'm convinced that she didn't do it. So, you know, there's the gray area, you know, there. And I think that that's what needs to be filled up when we meet whenever we're putting somebody in prison, in that period of time. And I think it's important to point out that in the SDPs as opposed to SDPs, the offense that they're actually in there for, they didn't get taken to trial on that and found beyond a reasonable doubt for that, the latest offense. It was a prosecutorial choice for the state's attorney or the attorney general to say, this guy's been given this promise for years. And so instead of just taking him to trial and send him away for another four or six, ten years or whatever, we're going to find him indefinitely and maybe he's out of our hair for a long time. Well, you know, the sad truth is they come back more and more often. They end up usually regretting that decision to make them SDPs because they have the trials every two years on it. But the underlying fact remains that that person is in prison and the big money for most of them, there's two female SDPs, but all the males are in big money. They're in Big Money River Correctional Center having not been convicted of the charge that they call the index offense. And so that's another reason, as I point out in my reply brief, that we've got to take extra care to give them all of those criminal procedural safeguards and not get too hung up on the notion that this is quasi-civil and quasi-criminal because it's a whole lot more criminal than it is civil. The Sexually Dangerous Persons Statute, the Sexually Violent Persons Statute is also quasi-criminal and quasi-civil. But it's a little more civil because the Department of Human Services, they've already been convicted of the underlying offense and now it's just whenever a person who's been convicted of a sex offense is getting ready to leave prison, every single one of them is given a sex offender evaluation to see what they're likely to do in a free offense. And only those most extreme ones are then recommended to the Sexually Violent Persons Program. And then they have a separate trial for them to say this person remains a threat to society. They need to be confined to the Sexually Violent Persons Program. And so it's quite a bit different. Though they seem to that lay viewer that we talked about to be very similar, they're actually very different on a number of levels. The fact that there actually was a guilty verdict or a guilty plea on the underlying offense. And so that's why I can accept the much more quasi-civil part of the Sexually Violent Persons Statute compared to the Dangerous Persons Statute. And so whenever you see where, hey, there actually are some, there is some rhyme or reason for the lines of why sexually dangerous persons or people are in a prison at Big Money in the Department of Corrections and sexually violent persons are in a hospital at Rushville through the Department of Human Services, there is a rhyme or reason for that. And because that rhyme or reason actually exists, you can't read the two statutes as if they're, you know, it works for SBPs and now Comstock has given us the leeway to consider it beyond a reasonable doubt or we're clear and convincing whenever we feel it's appropriate. Well, it works for SBPs, so clear and convincing. Go for it. No, that's not what needs to happen here because of those differences between the two programs. I could, you know, field questions if you like or I could just sit down and wait for rebuttal time. Thank you for your time. Thank you, counsel. Counsel? Good morning. Jennifer Camden on behalf of the people and may it please the Court, counsel. First, quickly, Your Honor, the definition of clear and convincing evidence, this Court actually defined clear and convincing evidence standard just a couple of years ago. In a case cited on page 17 of the People's Brief, this Court cited, sorry, defined it as that quantum of proof that leaves no reasonable doubt in the mind of the finder of fact regarding the veracity of the proposition in question. So to the extent that helps you, it's on page 17 of the People's Brief. The people's contention is that Section 205-9 of the Sexually Dangerous Persons Act making the standard of proof at recovery proceedings clear and convincing evidence is constitutional based first on the fact that in the SBPA's sister statute, the SBPA, the identical standard of proof at the identical stage of proceedings was deemed constitutional by the Illinois Supreme Court in Samuelson and further that this section is constitutional based on the standards applicable to mental health proceedings generally. In fact, the Court in Samuelson based its ruling on the standards applicable in civil mental health proceedings generally and it's worth looking at that Court's analysis. It finished the job in four sentences, a count of them, saying simply that SBPA proceedings are civil mental health proceedings. In mental health cases, the standard for even initial commitment is clear and convincing evidence. Therefore, the standard in recovery proceedings in the SBPA can be clear and convincing. The end. The respondent has argued that Winship supplies the standard of review in recovery proceedings. Now, of course, as the Court knows, this is the case that holds that juveniles were entitled to proof beyond a reasonable doubt that they committed a violation of criminal law. Now, of course, there's no such thing as recovery proceedings in criminal convictions. I mean, at some point, these concepts diverge here. We can't look to the criminal law for what the standard is in recovery proceedings after all because there's no such thing. I'd also point out that initial commitment in SBPA cases is on proof beyond a reasonable doubt that we're talking here today about in recovery proceedings about people who already have been adjudicated sexually dangerous beyond a reasonable doubt in each and every element of the definition of sexually dangerous person has been found beyond a reasonable doubt in the past. And we're talking now much more about treatment, which is the distinction that the U.S. Supreme Court made in Addington, which is one of the mental health cases cited by Samuelson in its discussion of what the standard of proof is in mental health proceedings. Addington, which is cited in the People's Brief, distinguished Winship, pointing out that different purposes were at issue. In criminal cases, we're talking about punishment for past wrongdoings, whereas in mental health proceedings in general. Do you think the two standards are different? A big question. Do you think the two evidentiary standards, proof standards, are different? It certainly appears to be the respondent's contention that they are different. Does the State believe that they're different in light of the definition that you cited in your brief? Really, in light of that definition, they appear to be kissin' cousins, definitely. Pardon me? They appear to be kissin' cousins, definitely. The beyond a reasonable doubt standard is used in criminal cases, though. It says it leaves no reasonable doubt. Isn't that pretty close to beyond a reasonable doubt? It certainly appears so. So is it the State's position that the two standards are virtually the same? I would use the word virtually, yes. Okay. I mean, this is a standard, after all, that's high enough that the courts have held to support the reproductive sterilization of mental incompetence and to find that parents are under that, et cetera. It's a very high standard. It's no cakewalk. Okay, we all agree that they're both high standards. Again, it's the State's position that they're the same standards, just worded differently. It appears that this Court has defined clear and convincing evidence as virtually identical to beyond a reasonable doubt. I mean, I can't compare this definition of clear and convincing evidence to the definition of beyond a reasonable doubt because we don't readily define beyond a reasonable doubt, do we? I mean, there's no jury instruction doing that, is there? The respondent has distinguished the SVPA and the SVPA based on a couple of differences between the two statutory schemes because Samuelson, of course, is so directly on point, seeing as how it does find constitutional, the same standard of proof at the same stage of proceedings. But a respondent doesn't say what about these particular distinctions that he draws makes a different burden required by the Constitution at recovery proceedings. I'd point out that Samuelson didn't rely on any of these distinctions when it found that clear and convincing evidence was a sufficient standard at recovery proceedings. The Court of Samuelson didn't say, for instance, well, because these people have been previously convicted of the index of abuse, that makes the clear and convincing evidence standard okay. Samuelson just based its decision on the fact that these were mental health commitment proceedings. More particularly, a respondent argues that one difference is that SVPs are housed in the care of the Department of Human Services, whereas SVPs are housed in the care of the Department of Corrections. This distinction was made and was rejected by the U.S. Supreme Court in People v. Allen or Illinois v. Allen, a case cited in the People's Brief and decided by the U.S. Supreme Court in 1986, in which the court held that the Illinois Sexually Dangerous Persons Act was constitutional and that it established civil mental health proceedings and held that not every procedural due process protection afforded to criminal defendants need be afforded to SVPs. In that case, the respondent argued that he was entitled to certain procedural due process protections based on the quasi-criminal nature of the proceedings. He argued that because he was housed in the DOC at that time, they were housed at Menard, that this made the proceedings quasi-criminal and he was entitled to these protections. The U.S. Supreme Court rejected that argument. The respondent also distinguishes the two statutes on the basis that SVPs have been convicted of the index offense, whereas SVPs have not. I'd point out that both Hendricks and Crane construed the Kansas Sexually Violent Predator Act and that that act actually applied to both people who had been convicted and people who had not been convicted of the index offense. It was sort of a hybrid SDP and SVP statute. And when Hendricks and Crane discussed the due process protections that were to be afforded to people under that act, it didn't distinguish between those two classes of persons. It treated them the same for purposes of the discussion of the due process protections that were to be afforded them. I'd point out that this is the point that the people were making at page 9 of the answer brief. Page 7 of the reply brief states that people were trying to score a point based on the name of that statute at issue in those cases. The point was that the statute construed in those cases covered both types of people and is instructive in both SDP and SVP cases. Closer to home, Illinois courts have not distinguished between these two statutes when construing them. In Masterson, the Illinois Supreme Court, in a sexually dangerous persons case, imported different sections of the Sexually Violent Persons Act so that both statutes would comply with Crane. The Court of Masterson said that the two statutes were governed by one spirit and a single policy. And in Samuelson, in a different section of Samuelson, the respondent in that case, sexually violent persons case, argued that there was an equal protection violation and that the SVP Act violated the equal protection clause. The Illinois Supreme Court, in dispensing with that argument, looked for guidance to how a similar argument had been disposed of under the Sexually Dangerous Persons Act. So we see that the courts look to the sister statutes here when interpreting them, making Samuelson directly on point in this case. The similarities of both statutes are legion, notably that both provide for the potentially indefinite civil commitment of people who are judged beyond a reasonable doubt to be sexual predators. In some, the respondent hasn't carried his burden of clearly proving a constitutional violation in this case, and this court should find that this section is constitutional. And I'd be happy to answer any questions that the court might have. I don't believe so. Thank you so much. Counsel? Thank you. Counsel talks about the court's acceptance of, the other court's acceptance of, SVP and SVP as being inter-distinguished and intertwined. In the Masterson case that they cite in the brief that she talked about there, the part where Masterson is considering them as sister statutes is regarding to definitions, terms used within the same, within the two statutes. And I think that, you know, comparing definitions within the two statutes is remarkably different than comparing them as if the policy of one and the policy of the other should be intertwined, and that the rules followed under one necessarily mean the rules follow under another. Otherwise, why have the two statutes, which they've both been on the books since 1998, the SVP statute being much older than that, the SVP statute being enacted in 1998. So the legislature obviously intended that they were two separate programs, two separate statutes, and so they need not be interpreted as identical, and I do not believe that Masterson stood for the premise that they would. The Kansas statute did deal with both those in the SVP situation and the SVP situation. I can concede that, but I think that helps me, not the state's case, because in the Kansas statute that was discussed in Crane, the review process was beyond a reasonable doubt, and that's what my client and me, I submit, is the appropriate standard on the review process. In SVP cases, because of the differences in the two programs that I talked at length about earlier on, counsel points out that my client and all the other SVPs were found guilty beyond, or if not found guilty, found in the SVP sexually dangerous persons beyond a reasonable doubt of the initial proceedings. Well, for my client, that was in the early 1990s, and as Mr. Sweeney was saying in the previous case, a lot changes. Things change in the people's makeup, in an individual's makeup over that period of time, and so I think that premise of people's mental makeup changes over a period of time, especially in a period of time whenever they are supposedly actively engaged in some sort of specific counseling, specific programming, specific group therapy, geared towards sexual offenses and how to recognize your cycle and that kind of thing. And that's what they're doing when they're in the sexually dangerous person program. And so I believe that the way that Crane and Hendricks' cases, you know, the guidance that they're leaving us for, and my understanding of ComStack doesn't stray from that. It just kind of puts its hands up and says, you decide, states, you decide. But I believe where Crane and Hendricks' cases were leading us was, if they're going through this programming like they were in Kansas and like they are here, then they should be afforded the dignity to have that habit proved by the highest standard we can come up with in a criminal court, prove that they remain sexually dangerous and they still need to be there. Here in 2010, not back in 1992, whenever he was first convicted, in 1993 or whenever they actually got around to having the trial. And so I think that the beyonder is without standard is the one that needs to be applied both initially and on review. I think the people in Springfield got a little aggressive and they lumped it in with the SBP program, and it's okay here, ignoring the differences in the two programs, and that was going too far. And I think the court should put up that red light and say, no, you can't go this far. We're not going to let you just completely ignore the liberty interests that are being trampled on here with these undesirable clients like I have. And they're undesirable clients, but they're still American citizens and they still have those rights to have their liberty interests protected. Any other questions, or I'll sit down and thank you. I believe we don't. Thank you. Thank you. We appreciate the briefs and arguments of both counsel, and we'll take the case under advisement. The court will be in a short recess.